UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-23060 CIV-MORENO/TORRES

JOSEPH FEHELEY, on behalf of himself and
all others similarly situated,

   Plaintiff,

vs.

LAI GAMES SALES, INC., a Texas
corporation and LEISURE AND ALLIED
INDUSTRIES, d/b/a LAI Group, an Australian
company,

   Defendants.     /
_____

**DEFENDANT LAI GAMES SALES, INC.'S REPLY TO PLAINTIFF JOSEPH FEHELEY'S MEMORANDUM OF LAW IN OPPOSITION TO LAI GAMES SALES, INC.'S MOTION FOR SUMMARY JUDGMENT**

  LAI Games Sales, Inc. ("LAI Games"), one of the Defendants, files this Reply to Plaintiff Joseph Feheley's ("Feheley") Memorandum of Law in Opposition to LAI Games' Motion for Summary Judgment and Cross Motion to Strike Motion for Summary Judgment for Failure to Comply with Local Rule 7.5.

### I. INTRODUCTION

  Feheley's Memorandum presents a litany of red herrings that serve no purpose other than to shift attention away from the fact that there is no issue of material fact that precludes summary judgment. Feheley devotes considerable time and attention toward what he perceives as a "byzantine structure of global corporate entities which never appear to be what they seem." (Feheley's Mem., p. 4-6.) Feheley's confusion should have been laid to rest with LAI Games' discovery responses, which identified the manufacturer of the Stacker and the respective roles of the Defendants. (LAI Games' Answers to Plaintiff's Interrogatories, [D.E. 30-5], Interrogatories No. 5(b), 15.) Yet in spite of these sworn and direct responses, Feheley claims to be confused, primarily owing to his unfounded assumption that every internet reference to "LAI Games" must

be a reference to Defendant LAI Games Sales, Inc.[1]

Second, Feheley attempts to obfuscate the issues by complaining about LAI Games' discovery responses. (Feheley's Mem., p. 6-7.) It should be noted that LAI Games provided timely responses to Feheley's 71 Requests for Production and 25 Interrogatories, and that LAI Games has produced hundreds of pages worth of documents. It should also be noted that Feheley filed his Memorandum before meeting and conferring about his supposed discovery complaints. The reason is clear. LAI Games did not manufacture the game that Feheley allegedly played. It is undisputed that LAI Games did not set the difficulty level on the game. It is undisputed that LAI Games did not operate the game Feheley says he played. Regardless, if Feheley feels that LAI Games' responses were improper, the question is properly presented in a motion to compel, as opposed to littering it throughout a response to a motion for summary judgment.

The third red-herring presented in Feheley's Memorandum pertains to his attempt to strike LAI Games' Motion because of LAI Games' purported failure to comply with the local rule requiring a concise statement of material facts. (Feheley's Mem., p. 7-8.) While not labeled as such, the "Introduction" section of LAI Games' Motion satisfies all of the requirements for a concise statement of facts, save for the use of numbered paragraphs. The Introduction section states the facts in less than 10 pages while referencing specific aspects of the pleadings and affidavits. Notwithstanding, LAI Games has filed, concurrent with this reply, a concise statement of material facts.[2]

None of these red herrings have anything to do with the substantive contentions in LAI Games' Motion. Neither the Defendants' organizational structure, nor LAI Games' discovery

---

[1] As briefed in connection with Defendant Avel Pty. Ltd.'s ("Avel") pending Motion to Dismiss for Lack of Personal Jurisdiction, more than one entity shares the prefix "LAI Games." (*See* Avel's Reply to Feheley's Memorandum in Opposition to Avel's Motion to Dismiss, [D.E. 17] p. 4, n. 3.) Feheley is aware of this, as evidenced by his discovery requests, many of which requested information concerning LAI Games USA, Inc., a non-party to this action. (*E.g.*, Feheley's First Set of Interrogatories, [D.E. 30-5], Interrogatories No. 10, 23.) Notwithstanding this awareness, Feheley conveniently assumes that every time "LAI Games" is mentioned in a marketing release, it must be a reference to Defendant LAI Games Sales, Inc.

[2] Feheley cites *Aitzol v. American Express Travel Related Services, Co.*, No. 08-602262-Civ., 2008 WL 5070275, at *4 (S.D. Fla. Nov. 25, 2008) for the position that the Court may properly strike LAI Games' Motion on the basis of a failure to comply with Southern District of Florida Local Rule 7.5. (Feheley's Mem., p. 8.) Not even the most imaginative reading of this case supports this interpretation. Instead, the court in *Aitzol* dismissed the plaintiff's complaint, and then struck the plaintiff's motion for summary judgment as moot, while adding a footnote that brought the local rule to the plaintiff's attention. *Id.* The plaintiff's failure to comply with the local rule did not in any way factor into the court's holding.

responses, nor the local rule, changes the facts that: (A) Florida Statute Section 849.15 cannot serve as the predicate for a *per se* violation of the FDUTPA; (B) Rule 9(b)'s heightened pleading standard applies to Feheley's FDUTPA claim, and Feheley has not satisfied this standard; and (C) Feheley has not conferred a direct benefit to LAI Games, as required to support his claim for unjust enrichment. As the following section details, once his red herrings are discarded, Feheley has no compelling responses to these dispositive components of LAI Games' Motion, and no amount of discovery can alter these conclusions.

## II.   ANALYSIS OF DISPOSITIVE ISSUES

### A.   *Per Se* Violation of the FDUTPA

As fully detailed in LAI Games' Motion, Feheley's *per se* FDUTPA claim fails because the statute on which it is predicated – Florida Statute Section 849.15 – cannot serve as a predicate violation of the FDUTPA.

First, Section 849.15 does not contain any of the express[3] or implied[4] language that is found in *per se* FDUTPA predicates. Second, even though Section 849.15 and the FDUTPA have co-existed for over 35 years, no Florida court has ever predicated a violation of the FDUTPA upon a violation of Section 849.15. Third, Florida Statute Section 849.21 authorizes individuals to pursue only injunctive relief for violations of Section 849.15, and nothing in Chapter 849 authorizes the recovery of damages associated with such a violation. Indeed, in that the FDUTPA independently provides for injunctive relief,[5] Section 849.21 would be rendered superfluous if Section 849.15 could serve as a predicate for a *per se* violation of the FDUTPA. These considerations explain why, in the 71 years worth of precedent involving Section 849.15 and its statutory predecessors, Feheley cannot cite a single case in which the statute has served as a basis for the recovery of civil damages.

---

[3] As listed in LAI Games' Motion, Footnote 1, at least 17 Florida statutes expressly state that a violation of the statute operates as a *per se* violation of the FDUTPA by utilizing language similar to the following: "A violation of this act is a deceptive and unfair trade practice and constitutes a violation of the Florida Deceptive and Unfair Trade Practices Act." *E.g.,* Fla. Stat. § 210.185(5); Fla. Stat. § 320.03(1); Fla. Stat. § 320.27(2). No such language is included in Florida Statute 849.15, upon which Feheley predicates his *per se* FDUTPA claim.

[4] As listed in LAI Games' Motion, Footnote 2, numerous Florida statutes imply that a violation of the statute operates as a *per se* violation of the FDUTPA by stating that a violation of the statute is "declared to be a deceptive trade practice and is unlawful." *E.g.,* Fla. Stat. § 816.415(6); Fla. Stat. § 501.937(4); Fla. Stat. § 501.0115. No such language is included in Florida Statute 849.15, upon which Feheley predicates his *per se* FDUTPA claim.

[5] Fla. Stat. § 501.211(1).

Feheley counters these considerations by proposing that the legislature's decision to impose criminal penalties for a violation of Section 849.15 somehow dictates that the statute was intended to serve as a predicate for a *per se* violation of the FDUTPA. (Feheley's Mem., p. 11.) According to Feheley, the FDUTPA converts every act in the criminal code into a claim for civil damages. This cannot be the case; the Florida legislature set out express and implied references to the FDUTPA in those criminal statutes that it intended to serve as predicates for civil FDUTPA claims, including criminal statutes contained in other sections of Chapter 849.[6] All of these references would be rendered meaningless under Feheley's interpretation, where every criminal act was intended to serve as a predicate for a *per se* violation of the FDUTPA.

The Federal Trade Commission ("FTC") cases Feheley cites can give him no solace. *See Gay Games, Inc. v. Fed. Trade Comm'n.*, 204 F.2d 197, 199 (10th Cir. 1953) (affirming a cease and desist order issued by the FTC to enjoin the distribution of a lottery device used to sell products); *Fed. Trade Comm'n. v. R.F. Keppel & Bro., Inc.*, 291 U.S. 304, 307-08 (1934) (affirming an FTC order to enjoin a game used in the sale of candy to children gambling). In both of those cases, the issue was not the game itself, but the use of the game to sell products. *See* 1A, Louis Altman & Malla Pollack, *Callmann on Unfair Competition, Trademarks and Monopolies* § 8:3(4th ed. 2002) (noting that in these cases "[t]he important fact . . . is that customers are induced by the element of chance to purchase goods so sold in preference to straight goods.") As one commentator discussing this line of cases made clear, "[t]oo much reliance . . . should not be placed on this case. . . . Cases subsequent to *Keppel* limited its holding to similar factual situations, i.e. product promotion by lottery." 1, Stephanie W. Kanwit, *Fed. Trade Comm'n* § 4:5 (2008). Here, Feheley does not allege that the Stacker is unfairly competitive because of its use to sell goods or even prizes. Neither of the cases relates to the issue of whether a game of skill that is allegedly a game of chance is deceptive or forms the basis of unfairness because of supposed confusion on that issue. Consequently, neither *Keppel* nor *Gay Games* has any applicability to this case.

---

[6] Florida Statute Section 849.0935(6), which regulates charitable drawings, expressly states that "[a] violation of this section is a deceptive and unfair trade practice," while subsection (7) also imposes criminal penalties. Under Feheley's interpretation of *per se* FDUTPA violations, subsection (6)'s reference to the FDUTPA is meaningless, as the criminal penalties imposed under (7) require the conclusion that Section 849.0935 serves as *per se* predicate under the FDUTPA. *See, e.g.*, Fla. Stat. § 501.0115; Fla. Stat. § 400.93; and Fla. Stat. § 501.160(9) (all of which contain both criminal penalties and an express or implied reference to the FDUTPA).

Moreover, while Feheley's Memorandum alleges that LAI Games committed a *per se* violation of the FDUTPA by virtue of FTC interpretations and federal case law, (Feheley's Mem., p. 12), this allegation is not found anywhere in Feheley's Complaint. Instead, Feheley's Complaint alleges only that LAI Games' "violation of Florida's 'slot machine' statute [Section 849.15] constitutes a *per se* violation of the Florida Deceptive and Unfair Trade Practices Act...." (Feheley's Complaint, [D.E. 1] ¶ 40.) Feheley cannot assert an original theory of recovery not contained in his Complaint as part of his response to a motion for summary judgment. *See, e.g., Anderson v. Cagle's, Inc.*, 488 F.3d 945, 959 (11th Cir. 2007) (district court properly ignored claims that were not alleged in the complaint when granting summary judgment in favor of defendant); *Paschal v. Fla. Pub. Employees Relations Comm.*, 666 F.2d 1381, 1383-84 (11th Cir. 1982) (even under the liberal interpretation afforded to pro se complaints, the district court properly dismissed a legal theory that was not included in the complaint); 5, Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1286 (3d ed. 2004) (courts are not required "to fabricate a claim that a plaintiff has not spelled out in his complaint.").

The inescapable legal conclusion is that Section 849.15 has not and cannot serve as the predicate for a *per se* violation of the FDUTPA. The relevant statutes dictate that Feheley is limited to injunctive relief, and he offers nothing – either in the text of the statute, or in the case law – to support the recovery of civil damages. Accordingly, Feheley's claim for a *per se* violation of the FDUTPA should be dismissed.

**B.     Traditional Violation of the FDUTPA**

Feheley quotes *Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781 at *1 (S.D. Fla. Nov. 26, 2007) for the position that "*some courts* have found that the heightened pleading requirements of Rule 9(b) do not apply to causes under the FDUTPA...." (Feheley's Mem., p. 12) (emphasis added). While the *Romano* quote is accurate, it also is misleading in that the majority of courts and the more recent analysis are clear: "***Most courts*** construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b). **In light of this trend, claims arising under the FDUTPA must be pled with particularity.**" *Meitis v. Park Square Enters., Inc.*, No. 6:08-cv-1080-Orl-22GJK, 2009 WL 703273, at *2 (M.D. Fla. Jan. 21, 2009)

(emphasis added) (quoting *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) and *Fla. Digital Network, Inc. v. N. Telecom, Inc.*, No. 6:06-cv-889-Orl-31-JGG, 2006 WL 2523163, at *5 (M.D. Fla. Aug. 30, 2006)); *Wrestlreunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-JDW-MSS, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008).

The weight of authority applies Rule 9(b)'s heightened pleading requirements to Feheley's FDUTPA claim. And contrary to Feheley's position, Rule 9(b) is not confined to the "pleading stage," (Feheley's Mem., p. 13), but may also apply in the context of a motion for summary judgment. *E.g. McFarlin v. Conseco Servs., LLC* 381 F.3d 1251, 1262 (11th Cir. 2004) (Rule 9(b) applied by district court in ruling upon motion for summary judgment); *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 516 n. 4 (11th Cir. 2000) (discussing Rule 9(b)'s heightened pleading requirement and holding that defendants were entitled to prevail on their motion for summary judgment); *Durham v. Bus. Mgmt. Associates*, 847 F.2d 1505, 1511-1512 (11th Cir. 1988) ("We believe that the allegations contained in the amended complaint and the affidavit before the district court on the motion for summary judgment satisfy the requirements of Rule 9(b).")

Feheley proposes that *Brooks v. Blue Cross & Blue Shield of Florida*, 116 F.3d 1364 (11th Cir. 1997) commands a different conclusion, but this is incorrect. (Feheley's Mem., p. 13.) *Brooks'* discussion of Rule 9(b) is dicta, as the court had already decided in favor of defendant's motion for summary judgment based on other grounds. *Id.* at 1380-81. In fact, the court expressly rejected the position Feheley asserts, noting "if the Plaintiff's RICO claims were to survive summary judgment [on other grounds], *they would nonetheless be subject to dismissal in their entirety for failure to plead fraud with particularity.*" *Id.* at 1381-82 (emphasis added).

The same conclusion is warranted here, where Feheley's Complaint has failed to meet the heightened pleading requirements of Rule 9(b). On pages 13 and 14 of his Memorandum, Feheley contends that he has satisfied Rule 9(b) for the five stated reasons contained in Paragraph 23 of his Complaint. However, as briefed more fully in LAI Games' Motion for Summary Judgment, Paragraph 23 does not satisfy Rule 9(b) because the paragraph lumps together the two Defendants in this case. *See, e.g., Ambrosia Coal & Const. Co. v. Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007). Feheley's Memorandum offers no clarification as to which

components of Paragraph 23 are directed toward which Defendants, and contains no authority to support that this inartful treatment passes muster under Rule 9(b).

Most egregiously, however, Feheley has reversed the burden of proof. Specifically, Feheley contends that "LAI Games has not established, with any documentary evidence or testimony whatsoever, that it did not mislead Plaintiff...." (Feheley's Mem., p. 14.) But LAI Games is not required to produce evidence that it did not mislead Feheley. Instead, Feheley is required to produce evidence showing that LAI Games mislead him. *E.g., Gonzalez v. Lee County Housing Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998) ("If the non-moving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' then the court must enter summary judgment for the moving party.") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).)

Feheley offers no evidence that he was misled. Feheley's "evidence" consists of: his Complaint (which is not evidence); the Stacker Operator's Manual (which could not have mislead him, as he never received it); irrelevant items from the internet (which even if they were relevant, could not have mislead Feheley, as he has not alleged that he viewed them); and Feheley's affidavit, in which asserts that he "believed that success would be based upon my skill," [D.E. 30-4, ¶ 4] without offering any evidence as to how LAI Games contributed to this personal belief, or why this personal belief is now assumed to be incorrect. No amount of discovery can change Feheley's pleadings. No amount of discovery will illuminate what, if anything, Feheley was told by LAI Games Sales.

In summary, Feheley's traditional FDUTPA claim should be dismissed because his complaint has not met the heightened pleading requirements under Rule 9(b), and because he has not produced any evidence of an essential element of his claim, *i.e.*, that LAI Games misled or deceived him in any way.

C.    **Unjust Enrichment**

To maintain a claim for unjust enrichment, "[t]he plaintiffs must show they **directly conferred a benefit** on the defendants." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) (emphasis added); *see Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400 (Fla. 3d DCA 2009) ("Plaintiff cannot allege nor establish that it conferred a direct benefit upon [Defendant]. Therefore, we conclude that the trial court properly

dismissed with prejudice the unjust enrichment claim...."); *Peoples Nat'l Bank of Commerce v. First Union Bank of Fla.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (dismissing claim for unjust enrichment because the plaintiff "could not and did not allege that it had directly conferred a benefit on the defendants.")

Feheley questions this fundamental proposition by citing *Sharp v. Bowling*, 511 So. 2d 363 (Fla. 5th DCA 1987) for the proposition that a claim for unjust enrichment does not require the plaintiff to bestow a direct benefit upon the defendant. (Feheley's Mem., p. 15.) Feheley's position is wrong: (1) *Sharp* does not contain any discussion of the requirement for a direct benefit; and (2) A direct benefit was in fact bestowed by the plaintiff in that case. Specifically, the plaintiff-employer in *Sharp* withheld $3,000 from the defendant-employees' wages, but mistakenly reported to the IRS that $6,667 had been withheld. *Id.* at 364. Using the mistaken withholding figures, the employee received an excessive tax refund. *Id.* When the IRS collected the mistaken refund from the employer, the employer sought to recover the same amounts from the employee. *Id.* As the court correctly concluded, the employee received a "windfall" to which "she was not entitled and for which her employers were forced to reimburse the IRS." *Id.* In other words, the employer conferred a direct benefit to the employee by reimbursing the IRS on the employees' behalf.

In contrast, Feheley has not and cannot allege that he conferred any direct benefit to LAI Games. The only benefit that Feheley bestowed upon anyone pertains to the money that Feheley deposited into the Stacker that he played. Yet it remains undisputed that LAI Games, "does not receive any benefit from player deposits into individual Stacker units." (Second Gustafson Affidavit, [D.E. 26-2] ¶ 4.) Feheley has not offered any evidence to the contrary. Instead, Feheley simply contends that "LAI Games benefited from the sale, rental, or lease of the Stacker game in this case." (Feheley's Mem., p. 15.) Of course, whatever benefit LAI Games derives from the sale, rental, and lease of Stackers is entirely irrelevant – Feheley confers none of these benefits, as Feheley does not allege that he purchased, rented, or leased the game.

Finally, Feheley inexplicably proposes that his unjust enrichment claim can somehow flow from training and financing that LAI Games allegedly provides to operators. But yet again, whatever unidentified benefit LAI Games receives from this training and financing is not directly (or even indirectly) conferred by Feheley, who has not alleged that he participated in the training or received any financing. Feheley seems to believe that a claim for unjust enrichment exists

80520552.2                                    8

against anyone who may have received some theoretical and remote benefit from his player deposits. Pursuant to this strained rationale, Feheley may well join Florida Lighting & Power as the next defendant, under the theory that some fraction of Feheley's deposits into the Stacker ultimately benefited the power company that provides electricity to the game.

Florida law precludes such a result. To prevail on his claim for unjust enrichment, Feheley must show that he conferred a direct benefit on LAI Games. The Second Gustafson Affidavit establishes that LAI Games does not receive any such benefit from player deposits, and Feheley has offered no evidence to the contrary. Nor do Feheley's allegations concerning training or financing establish any evidence that Feheley's deposits into the Stacker conferred any direct benefit to LAI Games. Because Feheley has offered no evidence that he conferred any direct benefit to LAI Games, his claim for unjust enrichment necessarily fails.

### III.   FEHELEY'S REQUEST FOR ADDITIONAL DISCOVERY

Feheley has requested that the Court defer ruling upon LAI Games' Motion until he has had an opportunity to conduct additional discovery. (Feheley's Mem., p. 16-17.) This request should be denied, as additional discovery will have no impact on the dispositive legal contentions presented in LAI Games' Motion.[7] No deposition will change the conclusion that Section 849.15 cannot serve as the predicate for Feheley's *per se* FDUTPA claim. No interrogatories will allow Feheley's traditional FDUTPA claim to avoid the heightened pleading requirements imposed by Rule 9(b), which Feheley has not met. And no discovery will eliminate the requirement for Feheley's unjust enrichment claim to establish that he conferred a direct benefit to LAI Games, a requirement which he has not and cannot allege.

Feheley's stated reasons for his purported need to conduct additional discovery are specious. Feheley contends that further discovery is necessary to resolve inconsistencies between LAI Games' sworn affidavits and information drawn off the internet, but on fair

---

[7] Feheley misstates LAI Games' position on discovery. While Todd Fodiman quotes part of a discussion with counsel, his quote is purposefully misleading. Plaintiff served a deposition notice containing twenty-five separate 30b(6) topics, including areas as vague as "all claims and issues raised in Plaintiff's complaint" and "all defenses, affirmative defenses, and denials contained in LAI Games' answer to Plaintiff's complaint." LAI Games' counsel wrote to Plaintiff's counsel and informed them that April 17, 2009 was not a convenient date, and also asked Plaintiff to narrow the topics and "let us know the areas on which you really want testimony so that we can identify the appropriate witness or witnesses, and work on scheduling depositions." (See March 23, 2009 letter from Edward B. Adams to Jon M. Herskowitz, attached as Exhibit "A".) That request was repeated in subsequent conversations and correspondence. The Plaintiff has failed to provide any narrowing about the topics on which he wishes to begin the depositions.

inspection, no inconsistencies exist. As an example, Feheley invents an inconsistency between LAI Games' Affidavit (which states that LAI Games distributes, but does not manufacture, the Stacker) and a marketing release from the internet, where "LAI Games touts itself as a 'subsidiary of Leisure and Allied Industries' which 'manufactures and sells coin operated games and Kiddie Rides around the world.'" (Affidavit of Todd A. Fodiman, [D.E. 30-7], ¶¶ 6-8.) Even assuming that the "LAI Games" referred to in this marketing release is a reference to Defendant LAI Games Sales, Inc. (as opposed to another entity sharing the "LAI Games" prefix), there is nothing inconsistent about LAI Games not manufacturing the Stacker, but being a subsidiary of a company which manufactures coin-operated games and Kiddie Rides.[8]

Feheley's request for additional discovery is nothing more than an attempt to prolong this litigation and to impose an undue burden upon LAI Games. The instant case is nothing like *WSB-TV v. Lee*, 842 F.2d 1266 (11th Cir. 1988), relied upon by Feheley, in which the defendant refused to respond to any discovery requests. (Feheley's Mem., p. 17.) LAI Games has in fact responded, and has produced significant information, such that Feheley's frustration is not the result of inadequate discovery, but rather the result of inadequate legal theories. As such, this case is more similar to those precedents that have rejected requests for additional discovery and granted summary judgment when ample discovery had been allowed, and where the nonmovant failed to demonstrate how additional discovery would change the outcome. *E.g., Fed. Election Comm'n v. Reform Party of U.S.*, 479 F.3d 1302, 1309 (11th Cir. 2007).

Because Feheley has not demonstrated any need for additional discovery, and because the dispositive legal contentions in LAI Games' Motion for Summary Judgment will not be altered by any additional discovery, Feheley's claims should be dismissed forthright.

## IV. CONCLUSION AND PRAYER

For all of the reasons stated herein, as well as for those reasons stated in its Motion for Summary Judgment, LAI Games respectfully requests that it Plaintiff's causes of action for *per se* violations of the FDUTPA, traditional violations of the FDUTPA, and unjust enrichment be dismissed with prejudice.

---

[8] Indeed, even if LAI Games manufactured coin-operated games and Kiddie Rides (as opposed to being a subsidiary of a company that manufactures such games), there would still not be anything inconsistent about LAI Games' sworn statement that it does not manufacture the Stacker (i.e., LAI Games could manufacture some coin-operated games and Kiddie Rides, but not manufacture the Stacker.).

Respectfully Submitted,

| | |
|---|---|
| BY: /s/ Anna D. Torres<br>ANNA D. TORRES, ESQUIRE<br>Florida Bar No.: 074837<br>**POWERS, MCNALIS, TORRES & TEEBAGY**<br>P.O. Box 21289<br>West Palm Beach, FL 33416-1289<br>(561) 588-3000 Telephone<br>(561) 588-3705 Facsimile<br>Attorney for the Defendant LAI Games Sales, Inc. and Leisure and Allied Industries, d/b/a LAI Group | BY: /s/ Edward B. Adams, Jr.<br>EDWARD B. ADAMS, JR., ESQUIRE<br>Texas Bar No. 00790200<br>**FULBRIGHT & JAWORSKI L.L.P.**<br>1301 McKinney, Suite 5100<br>Houston, TX 77010-3095<br>Telephone: (713) 651-5151<br>Facsimile: (713) 651-5246<br>Attorney for the Defendant LAI Games Sales, Inc. and Leisure and Allied Industries, d/b/a LAI Group |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 13th of April 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices.

BY: /s/ Anna D. Torres
ANNA D. TORRES, ESQUIRE

## SERVICE LIST

CASE NO.: 08-Civ-23060-Moreno/Torres
United States District Court, Southern District of Florida

| | |
|---|---|
| Anna D. Torres, Esquire<br>atorres@powersmcnalis.com<br>Powers, McNalis, Torres & Teebagy<br>P.O. Box 21289<br>West Palm Beach, FL 33416-1289<br>Telephone: (561) 588-3000<br>Facsimile: (561) 588-3705<br>Attorney for LAI Games Sales, Inc. and Leisure and Allied Industries, d/b/a LAI Group<br>Via CM/ECF<br><br>Edward B. Adams<br>eadams@fulbright.com<br>Fulbright & Jaworski L.L.P.<br>1301 McKinney, Suite 5100<br>Houston, TX 77010-3095<br>Telephone: (713) 651-5151<br>Facsimile: (713) 651-5246<br>Attorney for LAI Games Sales, Inc. and Leisure and Allied Industries, d/b/a LAI Group<br>Via CM/ECF<br><br>Seth Isgur<br>sisgur@fulbright.com<br>Fulbright & Jaworski L.L.P.<br>1301 McKinney, Suite 5100<br>Houston, TX 77010-3095<br>Telephone: (713) 651-5151<br>Facsimile: (713) 651-5246<br>Attorney for LAI Games Sales, Inc. and Leisure and Allied Industries, d/b/a LAI Group<br>Via Hand Delivery | Jon M. Herskowitz<br>jon@bhfloridalaw.com<br>Baron & Herskowitz<br>Penthouse One, Suite 1704<br>9100 South Dadeland Boulevard<br>Miami, FL 33156<br>Telephone: (305) 670-0101<br>Facsimile: (305) 670-2393<br>Attorney for Plaintiff Joseph Feheley<br>Via CM/ECF<br><br>Todd R. Legon<br>Legon, Ponce & Fodiman, P.A.<br>1111 Brickell Avenue, Suite 2150<br>Miami, FL 33131<br>Telephone: (305) 444-9991<br>Facsimile: (305) 444-9937<br>Attorney for Plaintiff Joseph Feheley<br>Via CM/ECF<br><br>Willam F. Rhodes<br>Legon, Ponce & Fodiman, P.A.<br>1111 Brickell Avenue, Suite 2150<br>Miami, FL 33131<br>Telephone: (305) 444-9991<br>Facsimile: (305) 444-9937<br>Attorney for Plaintiff Joseph Feheley<br>Via CM/ECF |