UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **08-23060-CIV-MORENO**

JOSEPH FEHELEY, on behalf of himself and all
others similarly situated,

    Plaintiff,

vs.

LAI GAMES SALES, INC., et al.,

    Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT AND DIRECTING FURTHER BRIEFING

Joseph Feheley alleges that the Defendants develop, manufacture, and sell a gambling device that masquerades as an arcade game. He has brought a purported class action against the Defendants alleging violations of Florida's consumer protection statute, violations of consumer protection statutes in other states, breach of express and implied warranty, and unjust enrichment. Defendant Avel has moved to dismiss for lack of personal jurisdiction, and Defendant LAI-USA has moved for summary judgment on the merits. The Court finds that it lacks personal jurisdiction over Avel, and hereby DISMISSES the case against it. The Court also GRANTS summary judgment to LAI-USA, both under Florida's consumer protection statute, and because Feheley lacks standing to bring claims for breach of express or implied warranty or unjust enrichment. Finally, the parties must further brief whether Feheley has standing to sue LAI-USA in this Court for breach of consumer protection statutes in other states.

## BACKGROUND

On November 3, 2008, Joseph Feheley filed a putative national class action Complaint that alleges Defendants LAI Game Sales, Inc. ("LAI-USA") and LAI Group ("Avel Pty. Ltd.")[1] develop, manufacture and market a gambling game called "Stacker" that masquerades as an arcade-style game. According to Feheley, Stacker offers users "a prize on the basis of chance" and is therefore "no different than a slot machine."[2] Feheley alleges that LAI-USA and Avel market and sell Stacker in violation of Florida's statutory prohibition of slot machines.[3]

Of course, Feheley has no standing to simply sue the Defendants for violation of a criminal statute that regulates gambling. Instead, Feheley couches the Defendants' allegedly illegal slot machine activities as *per se* violations of the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. ANN. §501.201 *et seq*. FDUTPA provides for an individual right to recover damages and

---

[1] In its Motion to Dismiss for Lack of Personal Jurisdiction, the party Defendant initially named "Leisure and Allied Industries, d/b/a LAI Group" by Feheley, avers that it is an Australia corporation, whose true corporate name is Avel Pty. Ltd., and that Leisure and Allied Industries is merely a registered trade name. In his Response, Feheley implicitly concedes this point, and proceeds to refer to this Defendant as "Avel".

[2] Complaint ¶40. To support his contention that Stacker is a slot machine and not a video game, Feheley describes the game in the following terms:

> The object of Stacker is to load or "stack" horizontally-moving blocks up to fifteen (15) levels high. At level eleven (11), the game enters a temporary holding pattern in which players can choose to collect a "minor prize" (worth only 20% to 30% of the price of a single play), or risk that prize to continue to play for a more valuable "major prize" (worth about 100 times the price of a single play) which allegedly, can be won at level fifteen (15). . . . Unbeknownst to those who play Stacker, the payout of major prizes is programmable and therefore, winning a major prize is not determined by a player's skill, but rather, by chance. Specifically, Defendants' default setting on every Stacker manufactured and sold is to dispense a major prize only once in every four hundred (400) plays. Thus, if a single play is one dollar ($1.00), a major prize (valued as much as one hundred dollars ($100.00)) will only be dispensed after four hundred dollars ($400.00) have been inserted into the Stacker game. . . . Defendants know that major prizes act as a lure to those who play Stacker, even though only 1 in 400, *i.e., one quarter of one percent (.25%)* (*or less, if the machine is set to dispense major prizes with even less frequency*) will ever win a major prize. Defendants characterize this one-armed banditry as "a brilliant game concept" in their promotional materials which they direct to businesses and entities that operate such machines for profit.

Complaint ¶¶12-17. Thus, Feheley construes §849.15 as prohibiting Stacker, because the game involves an "element of chance."

[3] *See*, FLA. STAT. ANN. §849.15.

attorneys fees.[4] In addition to these FDUTPA allegations, Feheley also claims that the Defendants have violated similar consumer protection laws in other states, breached express and implied warranties that Stacker is a game of skill, and have been unjustly enriched.

On December 9, 2009, Avel moved for dismissal for lack of personal jurisdiction. Avel argues that this Court lacks personal jurisdiction, because the Complaint fails to allege facts that establish Florida's long-arm statute reaches Avel, and because Avel lacks sufficient contacts with Florida to satisfy due process.[5]

Feheley responds that Avel controls LAI-USA to such a degree that Florida's long-arm statute reaches Avel.[6] Feheley also argues that Avel's marketing and sale of Stacker, allegedly through LAI-USA, establishes sufficient minimum contacts with Florida to comport with due process.

Notwithstanding disagreements about whether this Court has jurisdiction over its parent company, LAI-USA moved on March 4, 2009 for Summary Judgment. LAI-USA argues that §849.15 cannot serve as a *per se* violation of FDUTPA, and that in any event, LAI-USA has committed no violation of FDUPTA. Relatedly, LAI-USA argues that Feheley cannot establish privity of contract, as required to succeed on claims for the breach of express or implied warranty. Finally, LAI-USA contends that Feheley cannot establish any of the elements necessary to prove his unjust enrichment claim.

Feheley responds by characterizing violation of §849.15 as a *per se* violation of FDUTPA, and by arguing that material factual disputes remain regarding both a traditional violation of

---

[4]FLA. STAT. ANN. §§501.211, 501.2105.
[5]Motion to Dismiss at 2-3.
[6]The Parties do not dispute that this Court has personal jurisdiction over LAI-USA.

FDUPTA, and whether LAI-USA has been unjustly enriched. In the alternative, Feheley requests that the Court delay ruling on the summary judgment motion until he has obtained additional discovery.

## ANALYSIS

The Court hereby GRANTS Avel's Motion to Dismiss for lack of personal jurisdiction, DISMISSES WITH PREJUDICE Count II and IV, and DISMISSES WITH PREJUDICE Counts V-VII as to Avel. Feheley has failed to establish a *prima facie* case that LAI-USA operates as an agent for Avel within Florida, as required by the long-arm statute.

The Court also GRANTS LAI-USA's Motion for Summary Judgment as to Counts I, V-VII, and that portion of Count III that cites FDUPTA. The undisputed facts of this case fail to support Feheley's allegations that the Defendants' actions constitute either a *per se* or a traditional violation of FDUTPA. Moreover, the undisputed facts establish that Feheley lacks standing to bring a claim against the Defendants for breach of implied or express warranty because he possesses no privity of contract with them. Finally, undisputed facts fail to support Feheley's claim of unjust enrichment. For these reasons the Court hereby enters judgment in favor of LAI-USA, and DENIES AS MOOT all other pending motions.

Finally, the Court directs the parties to further brief whether Feheley has standing to bring the remainder of Count III in this Court. Feheley has alleged violations of foreign-state consumer protection statutes, but has failed to persuade the Court that these statutes confer standing for him to pursue those claims.

## I. Motion to Dismiss for Lack of Personal Jurisdiction

Feheley has failed to establish a *prima facie* case that LAI-USA operates as an agent for Avel

within Florida, as required by the long-arm statute. For that reason, he has failed to establish this Court's jurisdiction over Avel.

Florida's long-arm statute establishes specific personal jurisdiction[7] over corporate defendants whose agents, among other things, either carry out a business venture or commit a tort within Florida.[8] Nevertheless, the mere presence of a subsidiary within Florida, of itself, cannot subject a non-resident parent to jurisdiction.[9] Rather, the plaintiff must establish a *prima facie* case that the subsidiary acts as the parent corporation's agent.[10] To establish agency, the plaintiff must prove (1) acknowledgment by the principal that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the agent's actions.[11]

To satisfy the third prong of this test, the parent must exercise "very significant" control over the subsidiary.[12] For example, *Enic* refused to exercise personal jurisdiction over a parent corporation uninvolved in its subsidiary's day-to-day operations in Florida, even where the subsidiary *reported* to the parent corporation.[13] Pertinently, even though the parent corporation expressed approval of the contract at issue, the *Enic* court found it had no jurisdiction over the parent, because the subsidiary exclusively controlled the contract negotiations that later gave rise to the litigated breach of contract claim.[14]

The *Enic* plaintiff also failed to satisfy the first two prongs of the agency test. Neither the

---

[7] The Parties do not dispute whether the Court can exercise general personal jurisdiction over Avel; it maintains no ongoing business operations within Florida, so no general jurisdiction lies.
[8] FLA. STAT. ANN. §48.193(1).
[9] *Qualley v. International Air Service Co., Ltd.*, 595 So.2d 194, 196 (Fla. 3d D.C.A. 1992).
[10] *Enic, PLC v. F.F. South & Co., Inc.*, 870 So.2d 888, 890-91 (Fla. 5th D.C.A. 2004).
[11] *Id.* at 891.
[12] *State v. American Tobacco Co.*, 707 So.2d 851, 854-55 (Fla. 4th D.C.A. 1998).
[13] *Enic*, 870 So.2d. at 892.
[14] *Id.*

parent corporation nor the subsidiary acknowledged an agency relationship.[15] The subsidiary's presence in Florida "was primarily for the purpose of carrying on its own business, not that of the parent."[16] The record revealed "no act" by the parent "which could be interpreted as giving rise to the cause of action alleged by the Plaintiffs."[17]

In this case, Avel claims that it "did not design, market, manufacture, distribute or sell" Stacker.[18] In fact, Avel asserts that it "does not and has not directed any of the activities of [LAI-USA] relating to the Stacker game."[19]

For his part, Feheley refers to various hodge-podge press releases and news clippings allegedly appearing on the LAI-USA website, in an attempt to establish a close corporate relationship between Avel and LAI-USA. The Court finds these references wholly insufficient to establish that Avel exercises "very significant control" over LAI-USA.[20] More damagingly, Feheley has proffered scant evidence that Avel acknowledges LAI-USA as its agent in Florida, or that LAI-USA has accepted such an undertaking. For these reasons, the Court must grant Avel's Motion. Feheley bears the burden of establishing a *prima facie* case of agency, and has failed to do so.[21]

## II. Motion for Summary Judgment

Feheley has failed to establish either a *per se* or a traditional violation of FDUTPA. Moreover, because he possesses no privity of contract with LAI-USA, Feheley lacks standing to bring a claim for breach of implied or express warranty. Additionally, Feheley has failed to establish

---

[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] Motion to Dismiss at 4.
[19] First Gustafson Affidavit ¶7, Motion to Dismiss Exhibit A.
[20] *American Tobacco Co.*, 707 So.2d at 854-55.
[21] *Enic.*, 870 So.2d at 890-91.

unjust enrichment. For these reasons the Court GRANTS LAI-USA's Motion for Summary Judgment, and DENIES AS MOOT all other pending motions. Additionally, the Court's analysis on these issues would apply equally to Avel. Even if this Court were to find it had personal jurisdiction over Avel, it would still grant summary judgment for the same reasons that it hereby grants it for LAI-USA.

### 1. Undisputed Facts Evince No FDUTPA Violation

Feheley's FDUTPA allegations fail for two reasons. First, the Court declines to find that violation of §849.15 constitutes a *per se* violation of FDUTPA; even if LAI-USA transgressed §849.15, it has not violated FDUTPA. Second, LAI-USA committed no traditional FDUTPA violation, because it never marketed Stacker to individual consumers like Feheley. For those reasons, the Court enters judgment on behalf of LAI-USA as to Count I and Count III to the extent it invokes FDUTPA.

#### A. No *Per-Se* FDUTPA Violation

Feheley's *per se* theory fails. Section 849.15 cannot serve as a predicate for a FDUTPA violation. It neither expressly nor impliedly regulates unfair or deceptive trade practices, and no Florida court has ever cited it as a FDUTPA predicate. Moreover, Feheley cannot establish that LAI-USA engaged in unfair trade or deceived consumers.

*Per se* violations of FDUTPA stem from the transgression of "[a]ny law, statue, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices."[22] As LAI-USA points out, many Florida statutes expressly serve

---

[22]FLA. STAT. ANN. §501.203(3)(c).

as *per se* FDUPTA predicates.[23] Section 849.15 includes no such express language.

Neither can §849.15 serve as an implied FDUTPA predicate. Again, as LAI-USA points out, §849.15 includes no explicit declaration that a violation constitutes an unfair, unconscionable, or deceptive trade practice, as do other statutory provisions that operate as implied predicates,[24] nor has any Florida court ever premised a *per se* violation of FDUTPA on transgression of §849.15.[25]

To defend his *per se* theory, Feheley contends that §849.15 harmonizes with the objectives of FDUTPA, liberally construed: protecting "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."[26] According to Feheley, "the only acts that can be said to be 'outside' the reach of FDUTPA are those 'required or specifically permitted by federal or state law' and certain other statutory exceptions."[27]

The Court rejects this construction of FDUTPA. Taken to an extreme, it would morph almost any Florida criminal statute into a FDUTPA predicate, except those specifically exempted by §501.212. The Court finds this extremely broad reading of FDUTPA unsupported in law. Stated more bluntly, not a single legal authority indicates that §849.15 regulates unfair competition or deceptive trade practices. In fact, §849.15 has never even served as the basis for any type of civil recovery.[28]

Faced with this deficiency, Feheley points to FLA. STAT. ANN. §501.203(b), which defines

---

[23] Motion for Summary Judgment at 4. LAI-USA specifically points to seventeen Florida statutory provisions that expressly provide a cause for *per se* violation of FDUTPA.
[24] Motion for Summary Judgment at 5, footnote 2; *see also*, FLA. STAT. ANN. §501.937(4); FLA. STAT. ANN. §501.0115; FLA. STAT. ANN. §563.022(4).
[25] Motion for Summary Judgment at 6-7.
[26] FLA. STAT. ANN. §501.202.
[27] Response to Motion for Summary Judgment at 10, *citing* FLA. STAT. ANN. §501.212.
[28] Reply to Motion for Summary Judgment at 3.

violations of FDUTPA according to "[t]he standards of unfairness and deception set forth and interpreted by the Federal Trade Commission or the federal courts." Accordingly, Feheley, argues that the FTC and federal courts have regulated, as unfair and deceptive, devices that sell merchandise through games of chance.[29] Therefore, in his view, §501.203(b) bootstraps those holdings, establishing the sale and marketing of Stacker as a FDUTPA predicate.

The cases Feheley cites, however, fail to establish his premise. Both *Gay Games* and *Keppel* involved product promotion through gambling, which both the Supreme Court and FTC found deceptive. In contrast, Feheley theorizes that LAI-Games deceives consumers into believing Stacker is a game of skill, rather than a game of chance, because the game awards prizes in rare, allegedly pre-determined intervals. Assuming the facts of this allegation, such a practice cannot serve as a *per se* FDUTPA predicate; case law simply won't support such a strong conclusion.

More damagingly, undisputed facts fail to corroborate Feheley's theory that LAI-USA deceives consumers. In fact, LAI-USA does not market Stacker to the consuming public, nor does it operate Stacker. LAI-USA "distributes the Stacker to independent owners and operators [and Feheley] presumably played the game at the location of one of these independent third parties."[30]

Consequently, Feheley's *per se* theory fails, because §849.15 cannot serve as a predicate for a FDUTPA violation. It does not regulate unfair or deceptive trade practices. No Florida court has ever cited it as a FDUTPA predicate.

### A. No Traditional FDUTPA Violation

Uncontested facts also fail to support a traditional FDUTPA violation. Feheley cannot

---

[29] *See, e.g., Gay Games, Inc. v. Fed. Trade Comm'n*, 204 F.2d 197, 199 (10th Cir. 1953); *Fed. Trade Comm'n v. R.F. Keppel & Bro., Inc.*, 291 U.S. 304, 307-08 (1934).

[30] Motion for Summary Judgment at 10.

establish that LAI-USA committed a proscribed unfair act or deceptive practice.

Plaintiffs alleging a traditional FDUTPA violation must prove (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.[31] An act is deceptive or unfair where it is "likely to deceive a consumer acting reasonably under the same circumstances"; unlike a traditional fraud claim, a plaintiff need not prove actual reliance-in-fact.[32]

As previously noted, Feheley contends that LAI-USA deceived consumers into believing Stacker is a game of skill, rather than a game of chance. The Court finds this allegation unsupported by the facts. First, Feheley cannot prove that LAI-USA deceived consumers, because LAI-USA marketed Stacker exclusively to owners and operators.[33]

Second, and more importantly, Feheley cites, as evidence of deception, the very marketing materials LAI-USA uses to sell Stacker to owners and operators. To that end, the veracity of Feheley's allegations depends entirely, not on the deceptiveness of these materials, but on their *truthfulness*. Feheley argues that, despite honestly describing Stacker to potential owners and operators, according to Feheley, LAI-USA "caused" Stacker to deceive consumers like Feheley. In other words, LAI-USA "induced" owners and operators to purchase and operate an intentionally deceptive game. Thus, Feheley can allege only one discrete unfair or deceptive act committed by LAI-Games: the design and sale of Stacker, which Feheley evidently considers a *de facto* deceptive device.

The Court finds Feheley's premise far-fetched and unwarranted. No "reasonable consumer"

---

[31]*Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d D.C.A. 2006).
[32]*Office of Attorney Gen., Dep't of Legal Affairs v. Wyndham Intn'l, Inc.*, 869 So.2d 592, 598 (Fla. 1st D.C.A. 2004).
[33]*Betts v. Advance America*, 213 F.R.D. 466, 482 (M.D. Fla. 2003) (finding no FDUTPA violation where a defendant never made any misrepresentations to the plaintiff).

is likely to be deceived that Stacker is a game entirely of skill, and not of chance. Any computerized video game, even one which hands out prizes to consumers for completing certain tasks or advancing to certain "levels" within the confines of the game, necessarily involves programming and some form of pre-determined odds. Feheley has failed to adduce evidence that LAI-Games designed a game that intentionally "deceives" or "cheats" consumers. He simply finds it unfair that the game is designed to make money.[34]

Moreover, even if the Court found such deception likely, FDUPTA would hold the owners and operators of Stacker guilty of that deception. According to Feheley's own alleged facts, LAI-USA has "marketed" Stacker truthfully and honestly to those who purchase the game itself. The Court finds itself unwilling to conclude that LAI-USA thereby committed an unfair or deceptive act in violation of FDUPTA. In short, Feheley has failed to establish that LAI-USA committed any unfair or deceptive act, and his traditional FDUTPA claims must fail.

### 2. Undisputed Facts Evince No Breach of Implied or Express Warranty

As previously noted, LAI-Games never marketed Stacker to Feheley, and Feheley could not have played a version of the game owned by LAI-Games and marketed to the public. LAI-Games sells the games to owners and operators, who then benefit themselves from the coin-operation profits. Thus, the undisputed facts indicate no privity of contract between Feheley and LAI-Games, as required to sustain claims for breach of implied or express warranty.[35] Moreover, LAI-Games could not possibly have breached an express warranty, because it never established any express

---

[34]*See, supra*, note 4. Feheley objects to the fact that LAI-USA allegedly pre-programs Stacker to award prizes valued at approximately $100 only after consumers have fed $400 in "plays" into the machine.

[35]*Kramer v. Piper Aircraft Corp.*, 520 So. 2d 37 (Fla. 1988); *see also Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. 4th D.C.A. 2005).

warranty with Feheley. For these reasons, the Court enters judgment on behalf of LAI-USA as to Counts V and VI.

### 3. Undisputed Facts Evince No Unjust Enrichment

The Court also must enter judgment against Feheley as to his unjust enrichment claim, Count VII. A plaintiff claiming unjust enrichment must prove (1) that he conferred a benefit upon the named defendant; (2) that the defendant appreciated this benefit; and (3) that the defendant accepted and retained the benefit under inequitable circumstances and ought to pay the value thereof.[36] Having eliminated all of Feheley's other allegations that LAI-USA committed unfair or deceptive acts, or breached implied or express warranties, the Court finds no grounds to conclude that LAI-USA retained benefits under inequitable circumstances.

### III. Further Briefing on Count III

Feheley seeks to certify a national class of similarly situated plaintiffs, with diversity jurisdiction sounding in this Court under 28 U.S.C. §1332(d). To that end, Feheley alleges in Counts III and IV that the Defendants have violated various state consumer protection and gambling device statutes. As discussed *supra*, in Section I, the Court lacks personal jurisdiction over Avel and DISMISSES Count IV. Moreover, as discussed *supra*, in Section II, the Court enters judgment on behalf of LAI-USA as to those portions of Count III that invoke FDUPTA. Nevertheless, LAI-USA's Motion for Summary Judgment fails to address those portions of Count III that invoke foreign-state consumer protection and gambling laws. Consequently, the Court hereby requires the parties to further brief whether Feheley has standing to further pursue the remainder of Count III.

The Class Action Fairness Act (CAFA), enacted in February 2005, provides federal courts

---

[36] *Rollins* 951 So.2d at 876.

with diversity jurisdiction in a class action under FED. R. CIV. P. 23 where the proposed class has at least 100 members, the amount in controversy exceeds $5 million, and there is diversity of citizenship between one plaintiff class member and one defendant.[37] Nevertheless, in class actions, at least one named class representative must have standing to raise each class claim.[38]

The facts entitle LAI-USA to judgment as to Feheley's FDUPTA claims, and he has failed his burden to adduce facts that he has standing to pursue claims under the various other state consumer protection laws.[39] In particular, he has failed to allege or demonstrate that he played Stacker in any of these foreign states. He has failed to allege or demonstrate that even one of the foreign-state consumer protection statutes he cites confers standing on him, a Florida resident, to sue for the type of alleged "wrongdoing" described in the Complaint. The Court therefore finds Count III likely due for dismissal. However, the Court will provide the parties until **August 28, 2009** to submit briefs on this issue, with each side being given the opportunity to file responses by **September 8, 2009**.

## CONCLUSION

For the reasons set forth above, The Court hereby GRANTS Avel's Motion to Dismiss for lack of personal jurisdiction, dismisses with prejudice Count II and IV, and dismisses with prejudice Counts V-VII as to Avel. Feheley has failed to establish a *prima facie* case that LAI-USA operates

---

[37] 28 U.S.C. §1332(d).

[38] *Brown v. Sibley*, 650 F.2d 760, 771 (5th Cir. 1981) ("[i]nclusion of class action allegations in a complaint does not relieve a plaintiff of himself meeting the requirements for constitutional standing, even if the persons described in the class definition would have standing themselves to sue. If the plaintiff has no standing individually, no case or controversy arises."); *see also, Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 577 (M.D. Fla. 2006) ("the Court must determine that at least one named class representative has Article III standing to raise each class claim.").

[39] *Florida Family Polic Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009) (a plaintiff bears the burden "to produce facts sufficient to support its standing").

as an agent for Avel within Florida, as required by the long-arm statute.

The Court also GRANTS LAI-USA's Motion for Summary Judgment as to Counts I, V-VII, and that portion of Count III that cites FDUPTA. The undisputed facts of this case fail to support Feheley's allegations that the Defendants' actions constitute either a *per se* or a traditional violation of FDUTPA. Moreover, the undisputed facts establish that Feheley lacks standing to bring a claim against the Defendants for breach of implied or express warranty because he possesses no privity of contract with them. Finally, undisputed facts fail to support Feheley's claim of unjust enrichment. For these reasons the Court hereby enters judgment in favor of LAI-USA, and DENIES AS MOOT all other pending motions.

Finally, the Court directs the parties to further brief whether Feheley has standing to bring the remainder of Count III in this Court. Feheley has alleged violations of foreign-state consumer protection statutes, but has failed to persuade the Court that these statutes confer standing for him to pursue those claims.

DONE AND ORDERED in Chambers at Miami, Florida, this 10th day of August, 2009.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record